225 S.W.3d 272 (2006)
Samuel DOMINGUEZ, Jr., Appellant,
v.
Keith HUGHES, on Behalf of C.T.H., Minor Child, Appellee.
No. 08-05-00095-CV.
Court of Appeals of Texas, El Paso.
April 13, 2006.
*274 Doris Sipes, El Paso, for appellant.
Georgette Garcia Kaufmann, Assistant County Attorney, El Paso, for appellee.
Before BARAJAS, C.J., McCLURE, and CHEW, JJ.

OPINION
DAVID WELLINGTON CHEW, Justice.
Samuel Dominguez, Jr. appeals from the trial court's granting of a protective order which prohibits communication and contact with his nephew, C.T.H. In a single issue, Appellant contends the evidence is legally and factually insufficient to support the trial court's family violence finding and the granting of the protective order. We affirm.
Keith Hughes is the father of C.T.H. On November 19, 2004, Mr. Hughes filed an application for a protective order on behalf of C.T.H. against his maternal uncle, Appellant. The application alleged that Appellant had committed family violence against C.T.H. on four separate occasions, specifically alleging that: (1) on or about October 23, 2004, Appellant grabbed C.T.H. around the neck causing a bruise; (2) on or about April 7, 2004, Appellant assaulted C.T.H. causing bruises on his arms and legs; (3) on or about January 7, 2004, Appellant held C.T.H. down by his arms and legs causing bruises; and (4) on or about December 26, 2003, Appellant kicked C.T.H. on his back causing a bruise. After conducting a hearing, the trial court granted a protective order against Appellant, finding that family violence had occurred and was likely to occur again in the future. Appellant now appeals the trial court's order.
On October 27, 2004, Mr. Hughes picked up six-year-old C.T.H. after visitation with Lucy Dominguez, C.T.H.'s mother. As they were walking out of the visitation center, Mr. Hughes noticed that C.T.H. had a mark behind his right ear. Mr. Hughes asked C.T.H. about the mark, but C.T.H. did not respond. Mr. Hughes asked C.T.H. about it several times, but C.T.H. would not tell him anything. The following day, Lisa Bracken, C.T.H.'s day care provider, noticed a purplish mark behind C.T.H.'s right ear. When Ms. Bracken took C.T.H. aside and asked him about the mark, he started crying and was unable to speak. Ms. Bracken comforted him for a little while, told him it was okay, and asked him to tell her who had hurt him. C.T.H. told her that "Junior" had done it, referring to his uncle, Appellant. C.T.H. also showed her how Junior had placed his hand around his neck. Ms. Bracken asked him if he had told his father, and C.T.H. replied that he had not because he did not want Junior to get in trouble. She asked if it would be okay to tell his father, and C.T.H. said yes. When Mr. Hughes came to pick up C.T.H., Ms. Bracken told him what C.T.H. had told her. Mr. Hughes filed a police report the next day.
Joe Martinez, a clinical director with the El Paso Child Guidance Center, met with C.T.H. for an emergency therapy session on October 29. As C.T.H. entered the office, Mr. Martinez noticed a dime-sized *275 mark behind C.T.H.'s right ear. During the session, C.T.H. told Mr. Martinez what had happened and showed Mr. Martinez how his uncle had left the mark by putting his hand around C.T.H.'s neck and throat, with the thumb to the right of the jawbone. C.T.H. explained that the incident happened while they were playing on the floor. His mother was present and his uncle stopped when his mother told him to stop. C.T.H. was concerned that his uncle would get in trouble. C.T.H. consistently told Mr. Martinez the same version of events throughout the counseling session. Mr. Martinez had concerns for C.T.H.'s safety with respect to contact with Appellant based on a history of allegations of bruising caused by Appellant.
Lucy Dominguez testified that on October 27 her son, C.T.H., was visiting her and watching the World Series with family members. Appellant visited for about twenty-five minutes. Ms. Dominguez, her mother, Appellant, and C.T.H. were in the living room watching the game. Appellant was sitting on the floor and C.T.H. was sitting next to his maternal grandmother on the couch. Off and on, Appellant and C.T.H. were hugging or holding each other. At one point, Appellant lifted C.T.H. up in the air and was tickling C.T.H. and making him giggle. C.T.H. did not cry out at any point. Ms. Dominguez asked Appellant to stop these activities because she wanted Appellant to be careful with C.T.H. and to have a nice quiet visit since he and C.T.H. had not seen each other in a while. Ms. Dominguez also asked Appellant to stop because she was trying to watch the game. Ms. Dominguez stated that her son was the aggressor in the play conduct and that he had jumped on her brother. Ms. Dominguez believed her son had lied to Ms. Bracken. She did not know how C.T.H. got the mark behind his ear. Ms. Dominguez stated that Appellant did not grab C.T.H. by the neck and that the only other contact that might have caused the bruise was when Appellant lifted C.T.H. on his backside. According to Ms. Dominguez, Appellant did not do anything that was intended to harm C.T.H.
With regard to October 27, Appellant testified that while he was on the floor watching the game, C.T.H. initiated the playing around, hugging, and rolling on him. C.T.H. wanted Appellant to pick him up, so Appellant picked him up twice, one time from front and then C.T.H. later came back over and Appellant lifted him up again. C.T.H. then sat down and his sister told C.T.H. to quit it. Appellant denied ever placing his hand on C.T.H.'s neck such that it would leave a thumb print behind his ear. Appellant testified that there was some animosity between him and Mr. Hughes. Appellant never intended to harm C.T.H. and did not bruise him that evening. Socorro Dominguez, Appellant's mother, recalled that on October 27, they were all watching the game when C.T.H. wanted to play with Appellant. While they were playing, Appellant lifted C.T.H. up and C.T.H. was laughing. When Appellant lifted him up in the air, he had one hand around C.T.H.'s neck and the other one below his waist.
Isabel Medina-Espinoza, a supervision monitor at the Child Crisis Center, testified that on October 27, Mr. Hughes did not make any outcry about any injuries to C.T.H. when he picked C.T.H. up at the visitation center. No one at the center documented any new injuries to C.T.H. on October 27. On cross-examination, Ms. Medina-Espinoza explained that when a child is brought back after a visit, a staff member documents any visual marks on the face or arms of the child. They do not, however, do a careful physical inspection of the child. She agreed that it was possible for a child to have an injury behind an ear that went unnoticed. When shown *276 photographs of C.T.H.'s neck, Ms. Medina-Espinoza stated that she would not have seen the mark because she did not get close to him.
In his sole issue, Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's finding that family violence had occurred and was likely to occur in the future.

Standard of Review
In conducting our review of the trial court's finding for legal and factual sufficiency in the family law context, we apply a two-prong analysis: (1) Did the trial court have sufficient information upon which to exercise its discretion; and (2) did the trial court err in its application of discretion? Lindsey v. Lindsey, 965 S.W.2d 589, 592 (Tex.App.-El Paso 1998, no pet.). The traditional sufficiency of the evidence review, articulated below, comes into play when considering the first question. Id. We then proceed to determine whether, based on the elicited evidence, the trial court made a reasonable decision or whether it is arbitrary and unreasonable. Id.
In considering the legal insufficiency point, we consider the evidence that tends to support the fact finder's findings and disregard evidence and inferences to the contrary. Id. at 591. If more than a scintilla of evidence exists to support the questioned finding, the legal insufficiency point fails. See id.; Tseo v. Midland Am. Bank, 893 S.W.2d 23, 25 (Tex.App.-El Paso 1994, writ denied). In reviewing Appellant's factual sufficiency challenge, we examine all of the evidence in determining whether the finding in question is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. See Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex.1996); Cain v. Bain, 709 S.W.2d 175, 176 (Tex.1986). The trier of fact is the sole judge of the credibility of the witnesses and the weight given to their testimony. GTE Mobilnet of South Texas Ltd. Partnership v. Pascouet, 61 S.W.3d 599, 615-16 (Tex.App.-Houston [14th Dist.] 2001, pet. denied).

Protective Order
A trial court shall render a protective order if, after a hearing, it finds that family violence has occurred and that family violence is likely to occur in the future. TEX.FAM.CODE ANN. §§ 81.001, 84.001, 85.001 (Vernon 2002). "Family violence" in relevant part, is defined as:
(1) an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself;
(2) abuse, as that term is defined by Sections 261.001(1)(C), (E), and (G), by a member of a family or household toward a child of the family or household. . . .
Id. at § 71.004(1) & (2).
Section 261.001(1)(C) defines abuse as:
[P]hysical injury that results in substantial harm to the child, or the genuine threat of substantial harm from physical injury to the child, including an injury that is at variance with the history or explanation given and excluding an accident or reasonable discipline by a parent, guardian, or managing or possessory conservator that does not expose the child to a substantial risk of harm.
TEX.FAM.CODE ANN. § 261.001(1)(C)(Vernon Supp.2005).
*277 The evidence presented at the hearing shows that on October 27, 2004, six-year-old C.T.H. sustained a purplish dime-sized mark or bruise behind his right ear as a result of physical contact with Appellant during a visit. The injury was sustained during rough play between the two, in which Appellant lifted C.T.H. up into the air from his backside by grabbing C.T.H. by his neck and below his waist. C.T.H.'s father noticed the mark when he picked up C.T.H. at the visitation center. The following day, C.T.H.'s care giver asked him who had hurt him and C.T.H. in tears told her that it was "Junior," referring to Appellant. The next day, C.T.H. met with counselor Joe Martinez and told him what had happened and demonstrated how Appellant had placed his hands around C.T.H.'s neck and throat, which had left a thumb print mark behind his right ear. Mr. Martinez testified that he was concerned about C.T.H.'s safety with respect to further contact with Appellant because there was a history of allegations of Appellant bruising C.T.H. We conclude there was more than a scintilla of evidence to support the trial court's family violence finding because the evidence shows that C.T.H. suffered a physical injury that resulted in substantial harm during an incident of rough play between the child and Appellant, which was part of a history of allegations of bruising of the child by Appellant.
With regard to the factual sufficiency challenge, Appellant points to evidence that C.T.H. is a boisterous, lively child, that Appellant and C.T.H. were playing, that C.T.H. did not complain of any pain or fear, or feel threatened, that Appellant did not intend to hurt C.T.H., and that Mr. Hughes did not report the bruise upon immediate discovery. These facts, however, are not contrary to the evidence supporting the trial court's finding. Witnesses agreed that C.T.H. is an active child. C.T.H. did not tell anyone that he felt pain, fear, or threatened as result of the incident, but such evidence is not required to support the trial court's implied finding of abuse. Within forty-eight hours, three witnesses observed the bruise on C.T.H.'s neck. While Appellant and C.T.H.'s mother testified that Appellant never touched C.T.H.'s neck, Socorro Dominguez testified that she was present during the incident and observed Appellant lift C.T.H. into the air by the neck and waist. In this case, the trial court clearly found Appellant's testimony not credible and in addition considered the seriousness of the event in light of a history of bruise-producing physical contact between Appellant and C.T.H. We conclude that the evidence is both legally and factually sufficient to support the trial court's finding that family violence had occurred and was likely to occur again in the future. The trial court's decision to grant the protective order was reasonable based on the evidence presented at the hearing. Consequently, the trial court did not err in granting the protective order. Appellant's sole issue for review is overruled.
For the reasons stated above, we affirm the trial court's order.